UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACEY D. RATCLIFFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:16-cv-0302-DKL-WTL |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

*Entry on Judicial Review*

Stacey D. Ratcliffe brings this action for review under 42 U.S.C. § 405(g) of the Commissioner's denial of her claim for supplemental security income. For the following reasons, the Commissioner's decision will be affirmed.

*Background*

Ratcliffe applied in August 2012 for supplemental security income, alleging disability since January 2009 due to physical and mental impairments, including post-traumatic stress disorder, bipolar disorder, and depression. She only challenges the Administrative Law Judge's decision with respect to her mental impairments, so only those impairments are addressed in this entry.

This is not Ratcliffe's first application for benefits. She previously sought benefits and an Administrative Law Judge (ALJ) issued a decision on June 16, 2011, denying her claim. The district court affirmed. The determination that she was not disabled on or

before June 16, 2011, is final and not at issue here. Thus, the focus in this case is on Ratcliffe's condition after that date.

The ALJ held a hearing at which Ratcliffe testified. She was working part-time at a McDonald's restaurant, two and a half days per week. [R. 36.] She worked as a crew trainer, cashier, and lead worker with supervisory responsibilities. [R. 37.] She worked 7-hour and 5-hour shifts. [R. 38.] She had been working at McDonald's since 2012. [R. 41.] She earned just over ten thousand dollars a year in 2012 and 2013. [*Id.*] She declined full-time work, she stated, because of her slow concentration and poor balance caused by a lymphoma in her leg. [*Id.*]

At the time of the hearing, she was not receiving any mental health treatment. [R. 42.] She had stopped taking psychotropic medications in March 2014 and still was not taking any medications for depression or any mental health issues. [*Id.*] Yet she managed to work part-time. [R. 43.] Ratcliffe testified that she gets irritated "a lot" and "let things get to [her]." [R. 47.] She said she wants "to do something to somebody or to [herself] because [she's] irritated." [*Id.*] But, she added, she doesn't. [*Id.*] She said that she can't work full-time because of her irritability and anxiety. [R. 49.]

The ALJ found that although Ratcliffe worked after her application date in August 2012, she had not engaged in substantial gainful activity. [R. 14.] Nonetheless, the ALJ determined that this work activity suggested greater capabilities than she alleged. [*Id.*] Ratcliffe was found to have severe impairments including depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder, but none of these were considered to meet or equal the severity of a listed impairment. [*Id.*] The ALJ determined

2

that Ratcliffe has the residual functional capacity to perform a range of light work with limitations to account for her mental impairments. [R. 18.] Given her age, high school education, and residual functional capacity, the ALJ found that Ratcliffe can perform jobs existing in the national economy in significant numbers such as gate attendant, small products assembler, and production assembler. [R. 23-24.] Therefore, the ALJ concluded that Ratcliffe was not under a disability under the Social Security Act since the date her application for supplemental security income was filed. [R. 24.]

*Discussion*

When reviewing the ALJ's decision, the Court determines whether it is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The Court does not reweigh the evidence, resolve conflicts in the record, make credibility determinations, or substitute its own judgment for that of the ALJ. *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). An ALJ need not mention every piece of evidence, *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); however, the ALJ but must build an accurate and logical bridge from the evidence to his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Ratcliffe makes a slew of arguments, but most of them are undeveloped, unsupported, or both. She first argues that the ALJ ignored or rejected evidence that proved she was disabled, yet she fails to identify any specific evidence allegedly ignored or rejected. She maintains that the ALJ erred in not giving controlling weight to the opinions of her examining physicians proving she was disabled and failed to provide a

basis for rejecting the evaluations of treating providers, but again she fails to identify any specific opinion or any particular evaluation at issue. The ALJ, Ratcliffe submits, also misstated the evidence in order to minimize the severity of her impairments. But again, she does not indicate what evidence was misstated. And she fails to point out what psychological evidence she claims contradicts the ALJ's decision. All of these arguments are perfunctory and undeveloped and therefore are waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are deemed waived").

Ratcliffe also argues that she offered substantial evidence to prove she was totally disabled due to psychiatric problems. Yet, the Commissioner correctly observes that the substantial-evidence argument in Ratcliffe's opening brief is supported only by citation to evidence that predated the Commissioner's prior, final decision concluding Ratcliffe was not disabled on or before June 16, 2011. For example, Ratcliffe refers to the GAF score of 45 that she was given in May 2010 and the GAF score of 49 that she was given in February 2010. [*Pl.'s Br.*, doc. 22 at 11.] She must point to evidence from the relevant time period—after June 17, 2011. Further, her opening brief cites no evidence to suggest that her psychiatric problems have deteriorated since the Commissioner's prior decision. *See Abendroth v. Barnhart*, 26 F. App'x 580, 582-83 (7th Cir. 2002) (concluding that to prevail on a second claim for disability, claimant had to prove that his condition deteriorated to the point of disability after the time considered in the first claim); *Thomas*

4

*v. Colvin*, No. 14 C 7900, 2016 WL 1298680, at *3 (N.D. Ill. April 4, 2016) (noting that the ALJ properly "considered the question of disability only with regard to Plaintiff's SSI claim beginning on [the date of the previous ALJ denial]"). The question of whether Ratcliffe was disabled under the Social Security Act on or before June 16, 2011, has been conclusively and finally decided. It is not at issue in this case. Her condition on or before that date has relevance to this action only to the extent it provides background for her condition after that date. The issue before the ALJ in this case is whether Ratcliffe was disabled on or after August 2, 2012, the date she filed her second application for supplemental security income.

In response to the Commissioner, Ratcliffe argues that the ALJ overlooked evidence from the period after the date she filed her current application. Specifically, she notes that she was evaluated at Midtown Mental Health Clinic on June 21, 2012, when she was unable to work because of anxiety. (The "Statement of Facts" section of Ratcliffe's opening brief mentions this evidence, but it is not mentioned or relied on in the brief's "Argument" section. [*Pl.'s Br.*, doc. 22 at 5.]) In any event, the ALJ did not overlook this evidence but instead her written decision discussed Ratcliffe's treatment from Midtown Mental Health. [*See* R. 16 (noting the treating psychiatrist described Ratcliffe as calm and cooperative with adequate judgment and insight), 20 (discussing Midtown Mental Health treatment notes).] An ALJ is not required to mention every little bit of evidence in the record. *See, e.g., Arnett*, 676 F.3d at 592. Although the June 21 treatment note indicates that Ratcliffe has mental health issues, nothing in the note establishes that she was disabled under the Social Security Act due to her psychiatric

problems, particularly on or after August 2, 2012.  As the ALJ also noted, Ratcliffe participated in group therapy for a few months, her therapist described her as talkative and participatory, and her mental status exam remained within normal limits.  [R. 21 (citing Ex. 10F, page 7), R. 512).]

Next, Ratcliffe points out that her mental health was evaluated by Dr. Ibrar Paracha on October 6, 2012, at which time she complained of bipolar disorder, depression, PTSD, panic attacks, and a sleeping disorder.  [R. 503.]  The internist opined that she "has multiple psychiatric problems" and "needs a psychiatric evaluation."  [*Id.*]  (This evidence also was mentioned in the "Statement of Facts" section of Ratcliffe's opening brief, but not in her "Argument" section.  [*Pl.'s Br.*, doc. 22 at 5-6.])  The ALJ took the evidence of this evaluation into account in reaching her decision.  [R. 15, 19-20 (discussing Dr. Paracha's examination and conclusions), 21.]  Besides, "an ALJ need not mention every snippet of evidence in the record."  *Arnett*, 676 F.3d at 592.

Third, Ratcliffe states that she received psychiatric treatment at a hospital emergency room for panic attacks on four occasions since July 2013.  These panic attacks and ER visits were nowhere mentioned in Ratcliffe's opening brief.  Regardless, the ALJ considered the evidence of these ER visits, noting that on each occasion Ratcliffe was evaluated and released after brief treatment with instructions to resume therapy.  [R. 21.]  However, Ratcliffe testified that she has not resumed therapy.  And she presents no argument as to why these four, brief panic attacks establish that she was disabled within the meaning of the Social Security Act.  Any such argument is waived.  *See, e.g.*, *Crespo*,

824 F.3d at 673 ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

According to Ratcliffe, the ALJ erred in not calling a medical advisor psychologist to testify whether her combined mental impairments met or equaled a listed impairment. She also argues that the ALJ cited no evidence regarding medical equivalence and simply assumed her impairments did not meet or equal a listing. This is incorrect. The ALJ cited the state agency psychologist's opinion in the section of her decision addressing whether Ratcliffe meets or medically equals a listing. [R. 15-16 (citing Ex. 3A).]

Furthermore, the ALJ addressed in her decision Ratcliffe's request that she call a medical expert to testify on the issue of medical equivalence, noting that the opinion of the state agency psychological consultant was found in Exhibit 3A and that consideration of such an opinion satisfies the requirement that an ALJ take into account a medical expert's opinion on the question of medical equivalence. [R. 11.] The state agency psychologist's opinion is substantial evidence on the question of medical equivalence. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (concluding an ALJ may rely on state-agency physicians' opinions in disability forms and provide little additional explanation where there is no contradictory evidence on medical equivalence in the record). And Ratcliffe points to no contrary opinion on medical equivalence in the record.

Lastly, Ratcliffe challenges the ALJ's hypothetical to the vocational expert on the ground that it did not accurately reflect her impairments. But the hypothetical need only account for those impairments and limitations that the ALJ finds the claimant to have. *See, e.g., Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) ("Hypothetical questions posed

7

to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record.").

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Therefore, the Court will affirm the Commissioner's decision.

DATED:   3/22/2017

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record